FILED

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA OCT 15 AM 9:19
### ORLANDO DIVISION

| | |
|---|---|
| JOHN DOES # 1-60, on behalf ) | Civil Case No. _____ |
| of themselves and others similarly ) | 6:18- CV -1731 Orl-41 KRS |
| situated, ) | |
|     Plaintiffs, ) | |
| v. ) | **CLASS ACTION COMPLAINT** |
| RICK SCOTT, Governor of the ) | |
| State of Florida, and RICK ) | |
| SWEARINGEN, Commissioner of ) | |
| the Florida Department of Law ) | |
| Enforcement, in their official ) | |
| capacities, ) | |
|     Defendants. ) | |
| ) | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS TO U.S. CONSTITUTION, DECLARATORY JUDGMENT RELIEF, AND INJUNCTIVE RELIEF

COMES NOW the Plaintiffs, John Does 1-60, by and through undersigned

counsel, Estes-Hightower, PLLC, and file this class action complaint for

injunctive and declaratory relief under 28 U. S. C sections 1331, 1343, and 2201-

2202 as well as 42 U. S. C. section 1983. This complaint challenges Florida Statutes,

section 943.0435 (1997), Florida's sexual offender registration and notification act (FSORNA) because that statute violates multiple provisions of the United States Constitution. Plaintiffs seek to permanently enjoin the Defendants from enforcement of FSORNA.

Plaintiffs allege that specific portions of FSORNA violate the Ex Post Facto and Contracts Clauses of the U. S. Constitution, the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution, and the First, Fifth, and Eighth Amendments to the U. S. Constitution. Plaintiffs are challenging FSORNA both facially and as applied to each of them.

## I- JURISDICTION

1. Jurisdiction is proper under 28 U. S. C. sections 1331 and 1343 because plaintiffs seek redress for the deprivation of rights secured by the U. S. Constitution. The plaintiffs' claims are brought under 42 U. S. C. section 1983.

2. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U. S. C. sections 2201-2202, Federal Rules of Civil Procedure 57 and 65, and by the legal and equitable powers of this Court.

3. Venue is proper in the Middle District of Florida pursuant to 28 U. S. C. section 1391(b).

## II-STANDING

4. All Doe Plaintiffs are directly affected by the FSORNA and its unconstitutional enforcement, since that statute has caused violations of Doe Plaintiffs' rights under the U. S. Constitution. As a result, the requirements of Article III, section 2 standing have been met.

## III-THE DEFENDANTS

### Governor Rick Scott

5. Defendant Rick Scott is the Governor of Florida. He is sued in his official capacity. Article IV, section 1(a) of the Florida Constitution vests the supreme executive power of Florida in the governor, and requires the governor take care that the laws be faithfully executed. Defendant Scott is responsible for the enforcement of Florida law, and for the supervision of all executive branch departments, including the Florida Department of Law Enforcement. Article IV, section 6, Florida Constitution. As a result, the Governor is an appropriate defendant in a case challenging the constitutionality of a state statute such as FSORNA.

### Commissioner Rick Swearingen

6. Defendant Rick Swearingen is Commissioner of the Florida Department of Law Enforcement (FDLE). He is sued in his official capacity. FDLE is statutorily charged with maintaining Florida's Sex Offender Registry pursuant

to section 943.0435, collecting and disseminating all information required to be disclosed by FSORNA, maintaining an online-accessible database of the information collected from Florida sexual offenders, and all other tasks mandated by FSORNA. The Commissioner of FDLE is a proper defendant in a case challenging the constitutionality of FSORNA.

### IV-Plaintiffs

### John Doe #1

7. John Doe #1 is a 45-year old resident of Florida. He was convicted of six counts of indecent liberties with a child in Virginia in 2006. He began registering twice a year for life in 2014. Although Mr. Doe #1 has been determined by a sex offender therapy professional not to be a danger to reoffend he is prohibited from participating in school activities with his grandchildren, attending college, traveling out of county, and has lost numerous employment opportunities due to his sex offender status.

### John Doe #2

8. Plaintiff John Doe #2 is a 59-year old resident of Florida. In 2000 he entered a plea of guilty to one count of attempted sexual battery of a person under 12 years of age and three counts of sexual activity with a child by a person in familial or custodial authority, receiving a sentence of ten years probation,

including a special condition he receive treatment as a mentally disordered sex offender. These offenses involved Mr. Doe #2's stepdaughter, and were the result of a combination of alcohol and drug abuse as well as unresolved anger due to his own childhood sexual abuse at the hands of a neighbor. Mr. Doe #2's probation was terminated successfully after he "both made and maintained outstanding progress" in his therapy, resulting in the treating therapist offering his expert opinion that "the likelihood that [Mr. Doe #2] would ever commit another sex offense is minimal to nil." He began registering four times per year for the rest of his life under FSORNA in 2001.

9. Based on his status as a registered sex offender, Mr. Doe #2 has not been able to change residences for 15 years, as every community or homeowner association he has contacted has refused to rent or sell to him upon finding out his presence on the Florida registry. He has also had eggs thrown at his homes upon neighbors discovering his status as a sex offender. He has been denied numerous jobs for the same reason; employers inevitably decline to offer him work once they are informed he is on FSORNA's sexual offender registry.

10. In addition, Mr. Doe #2 has been denied entry into school functions in Miami-Dade County due to his presence on the Florida sexual offender registry, preventing him from participating in activities involving his children or grandchildren. Similarly, he has had to restrict his usage of the

Internet for work search or personal communications with family and friends, and was banned from Facebook due to his identification as a sexual offender.

11. Finally, Mr. Doe #2 was banned from admission to Disney Theme Parks as a result of being on FSORNA's Florida sexual offender registry. Although he was found to have "minimal to nil" likelihood to reoffend, Mr. Doe #2 will be required to register a plethora of personal information to Florida law enforcement authorities four times a year for the rest of his natural life.

### John Doe #3

12. Plaintiff John Doe #3 is a 54-year old resident of Florida. He entered a no contest plea to indecent assault and lewd molestation involving his stepdaughter in 2006. The charges originated from events in 1994. He was sentenced to three years community control followed by ten years probation. Mr. Doe #3 began registering pursuant to FSORNA four times a year in 2008. He had no criminal convictions prior to the charges listed above and has had no arrests for criminal offenses since that time.

13. Since his arrest and convictions outlined in paragraph 15, *supra.*, Mr. Doe #3 has become a husband, father, homeowner, and successful internet-based software engineer overseeing his wife's 6100 music artist clients. All the same, he is required to maintain absolute anonymity from those clients, as well as other business and personal associates, in order to avoid losing business

accounts and friends due to being on the FSORNA registry. In addition, he has been forced to forgo participation in his son's school-related activities.

### John Doe #4

14. John Doe #4 is a 44-year old resident of Florida. He was convicted after a plea of no contest to lewd and lascivious molestation, receiving a sentence of 81 months prison. He began to register twice yearly under FSORNA in 2011.

15. Mr. Doe #4 has not been able to move from his current residence since being on the Florida registry because it literally took his mother months to locate a property that would rent out their premises to a registered sexual offender. Mr. Doe #4 has, likewise, been denied or terminated from multiple jobs because of being under the supervision of law enforcement due to FSORNA. In addition, he has not been able to attend school functions such as college and high school graduations involving his biological children due to schools refusing admission to persons listed on the Florida sexual offender registry. Nor has Mr. Doe #4 been able to participate in other school activities involving his children. Additionally, he has not been able to have friends of his children visit his home due to his sex offender status.

16. Mr. Doe #4 does not participate in Internet communications with family, friends, or potential employers due to the "internet identifiers" disclosure requirements of FSORNA. Furthermore, he was prohibited from opening a Facebook account as a registered sexual offender.

17. Mr. Doe #4 has sought to further his education by attending local colleges, but has been told he was not allowed to attend school on campus. As a result, he only utilizes online courses as sporadically offered.

18. Despite Mr. Doe #4 having no other criminal convictions since the charge that landed him on FSORNA's registration list, he will be required to register twice a year for life, even though he has never been determined to be a risk to reoffend in any fashion, sexually or otherwise.

**John Doe #5**

19. John Doe #5 is a 64-year old resident of Florida. He pled guilty to four counts of indecent liberties and no contest to one count of indecent liberties and one count of incest, then was sentenced to 34 and 48 months prison, respectively, in Washington State court in 1988 and 1990. He began registering twice a year for life in Florida pursuant to FSORNA in 2011.

20. Mr. Doe#5 has not been able to obtain employment since becoming listed on FSORNA's sexual offender registry, as all potential employers he has spoken to absolutely refuse to even consider hiring a registered sex offender, without

exception. As a result, his house has been in foreclosure since 2009, and he has not been able to secure alternative housing since that time, as potential landlords likewise refuse to rent or sell to him under any circumstances.

21. Additionally, Mr. Doe #5 does not travel anywhere outside his county of residence, Sarasota County, due to excessive harassment from Sarasota County deputy sheriffs, who randomly bang on his doors and windows at literally all hours of the day or night loudly inquiring whether he was still residing at his listed residence. Additionally, these deputy sheriffs call ahead to any place he seeks to travel, resulting in prohibitions from entering business establishments, theme parks, and potential employers' businesses out-of-state or out-of-county.

22. Finally, Mr. Doe #5 has been prohibited from having any contact with his children during school related activities. Furthermore, family law courts in Washington State and Florida have used his presence on the Florida sexual offender registry to prevent him from having any contact whatsoever with his biological children in those states, despite a lack of expert testimony that he poses any danger to them. As a result, Mr. Doe #5 faces a lifetime of reporting twice yearly personal information to law enforcement agencies despite being no danger to reoffend.

**John Doe #6**

23. John Doe #6 is a 55-year old resident of Florida. He entered a guilty plea to sexual battery in familial or custodial authority, receiving a withheld adjudication and three years probation. The charge arose in 1994. Mr. Doe #6 has lost numerous jobs and residences due to being on the Florida sexual offender registry. In addition, his status as a sexual offender has prevented him from attending activities involving his children in school and elsewhere. Despite Mr. Doe #6 being determined not to be a danger to others sexually after court-ordered therapy, he is still required to register twice a year for life.

**John Doe #7**

24. John Doe #7 is a 73-year old resident of Florida. In 1997, he was accused of sexual offenses involving his daughter and granddaughter, which allegedly occurred in the 1980s. He has been required to register under FSORNA since 2012. He served in the Marines in Vietnam upon graduating from high school, and then was an elementary school principal after graduating college. He retired in 1997 due to post-traumatic stress disorder that began after his return from military service. Despite having no criminal convictions before or since the crimes for which Mr. Doe #7 is required to register under FSORNA, and

despite never having been determined to be a danger to re-offend, he is required to re-register four times a year for life.

### John Doe #8

25. John Doe #8 is a 77-year old resident of Florida. In 1989, he pled guilty to attempted sexual battery and received a ten-year probation sentence. As a condition of probation, Mr. Doe #8 successfully completed a sexual offender counseling program. He began registration under FSORNA in 2018 after pleading no contest to failure to register as a sexual offender in Lee County, Florida, where he maintains his home. He is required to register four times a year for the rest of his natural life despite being successfully discharged from sexual offender therapy in 1992.

### John Doe #9

26. John Doe #9 is a 57-year old resident of Florida. He was convicted of unlawful dissemination of indecent material to a minor in New York in 2007 and began registering under FSORNA at that time because he regularly traveled between New York and Florida. He registers twice a year as a sexual offender in Florida and will continue doing so for the remainder of his life.

27. Mr. Doe #9 has refrained from traveling out of the country due to the traumatic impact of being detained and his person searched every time he leaves the country. Equally traumatic is the fact that sheriff deputies visit him

monthly to verify his residential address. Mr. Doe #9 has also been denied an application to live in a condominium in Fort Lauderdale due to his presence on the Florida sexual offender registry.

28. Mr. Doe #9 has been banned from Facebook and Twitter due to the requirement that he disclose his email addresses and Internet identifiers pursuant to FSORNA. As a result, he has not been able to take advantage of commercial discounts and other opportunities available on social media. Nor is he able to regularly communicate with friends who utilize social media as their primary means of staying in touch with other people.

29. Despite having successfully completed sex offender therapy as mandated by his probationary sentence in New York, as well as ongoing therapy treatment in Florida, Mr. Doe #9 will be required to register for life in Florida as a sexual offender based on FSORNA, even though he is not a present danger to reoffend.

### John Doe #10

30. John Doe #10 is a 57-year old resident of Florida. In 2001, he pled no contest to lewd acts in the presence of a child, receiving a sentence of ten years probation. He is required to register twice a year as a sexual offender by FSORNA. He will be required to do so for the rest of his life despite

successfully completing sex offender therapy as a special condition of his probation.

### John Doe #11

31. John Doe #11 is a 40-year old resident of Florida. He was convicted of sexual battery in 2007, receiving a sentence of 8 years prison followed by probation. He has been on the FSORNA sexual offender registry since February 2015, registering four times per year. Mr. Doe #11 has lost multiple jobs and residences since beginning on FSORNA. He has been unable to attend school related field trips with his minor child due to restrictions placed on him by schools due to FSORNA, and he has had child custody visitation reduced as a result of being listed on the Florida sexual offender registry maintained by defendant FDLE. Mr. Doe #11 will be required to comply with FSORNA registration and personal information disclosure requirements for the rest of his life despite successfully completing psycho-sexual therapy as a special condition of his probation.

### John Doe #12

32. John Doe #12 is a 40-year old resident of Florida. He was convicted of lewd and lascivious acts on a child in 2000, was discharged successfully from probation in 2005, and then began registering twice a year as a sexual offender in Florida due to FSORNA. As a result, employers utilizing the public access

website of FDLE have either denied him jobs or terminated his job when already hired for work. In addition, Mr. Doe #12 has been denied the opportunity to rent or own numerous homes, once more due to homeowners accessing the information on FDLE's website listing sexual offenders subject to FSORNA. Furthermore, he has consistently been denied the chance to participate in activities at his children's schools because of his sexual offender status, and cannot pursue his own education due to colleges refusing to allow him to enroll. Lastly, Mr. Doe #12 has forgone traveling out of state to visit family or friends and has not been able to use the Internet, personally or commercially, due to FSORNA's disclosure requirements. Even though he successfully completed sex offender therapy as a condition of his probation and has shown a lack of danger to reoffend, Mr. Doe #12 is required to comply with all the limitations on his right to live his life.

### John Doe #13

33. John Doe #13 is a 59-year old resident of Florida. He entered a plea of guilty to sexual battery in 2004, receiving a 15-year probationary sentence that was terminated successfully in 2012. He, likewise, successfully completed intense sex offender counseling as a special condition of probation. Mr. Doe #13 began registering four times a year under FSORNA in 2005.

34. Mr. Doe #13 has lost numerous job opportunities due to prospective employers utilizing FDLE's FSORNA website, which lists his name, to prohibit him from obtaining or maintaining employment. He is unable to live in the location of his choice because of the use by prospective landlords of the website to discover his status as a sexual offender who then deny him a rental property or to sell him a home.

35. Despite successful completion of a sex offender therapy program and neither Defendant has offered any evidence that he is a danger to reoffend, Mr. Doe #13 must continue to register four times a year for the rest of his natural life under FSORNA.

### John Doe #14

36. John Doe #14 is a 43-year old resident of Florida. He was convicted of a child sex offense in Georgia in 2011 and will be on probation until 2032. He reports four times a year under FSORNA and has lost jobs and opportunities to rent or own a home due to being listed on the Florida sex offender registry. Even though Mr. Doe #14 successfully completed sex offender therapy as a condition of his probation, thereby eliminating any danger he will reoffend, he must nonetheless register as a sex offender for the rest of his natural life.

**John Doe #15**

37. John Doe #15 is a 36-year old resident of Florida. In 2015 he pled no contest to ten counts of sexual performance by a child then was placed on 5 years probation. His adjudication was withheld. He began registering twice a year under FSORNA in 2017. Due to travel disclosure restrictions required by FSORNA Mr. Doe #15 has had his salary reduced at work, as he can no longer perform all tasks required on his job. In addition, being on the Florida sex offender registry prevents him from purchasing or renting property within certain distances from day care, school, and other buildings. Finally, FSORNA's Internet reporting requirements have limited Mr. Doe #15's ability to perform his job, look for employment, or communicate with his family.

**John Doe #16**

38. John Doe #16 is a 35-year old resident of Florida. He pled no contest to a charge of possession of computer pornography in 2008, receiving a sentence of 404 days jail (time served), and was required to register twice a year for life pursuant to FSORNA. He has been denied the opportunity to rent homes and has lost jobs due to the registration requirement. He no longer uses social

media due to Facebook and Instagram deleting his accounts because of his sex offender status.

### John Doe #17

39. John Doe #17 is a 39-year old resident of Florida. He was convicted of sexual assault of a minor in Texas in 2002 and began registering in Florida, based on FSORNA, twice a year after he moved to this state. He has lost numerous jobs due to being listed as a sexual offender by FSORNA and has been prevented from obtaining or maintaining lease agreements to rent property for the same reason.

40. In addition, Mr. Doe #17 cannot attend numerous school related functions due to restrictions placed on him by schools that access his identity from the FDLE sex offender website. Mr. Doe #17 has also had to restrict his use of the Internet for work-related functions, such as Facebook groups, and for interaction with friends and family. He has had to relinquish opportunities to continue his formal education due to restrictions on access to college campuses due to FSORNA.

### John Doe #18

41. John Doe #18 is a 70-year old resident of Florida. He pled no contest to two counts of attempted sexual battery and lewd or lascivious act upon a child under the age of 16, receiving concurrent five-year probationary sentences.

As part of this disposition he successfully completed sex offender therapy. Mr. Doe #18 is required to re-register four times a year for life despite not being a danger to reoffend.

### John Doe #19

42. John Doe #19 is a 34-year old resident of Florida. He pled guilty to two counts of lewd and lascivious exhibition in 2006, receiving five-year probationary sentences on each count. As a special condition of probation, Mr. Doe #19 successfully underwent sex offender therapy. He is required by FSORNA to register twice a year for the rest of his life. He has been denied employment and the ability to rent a residence due to being on the FSORNA registry. Mr. Doe #19 has also been denied access to his children's school activities for the same reason.

### John Doe #20

43. John Doe #20 is a 47-year old resident of Florida. In 1994, he pled guilty to two counts of lewd or lascivious act in the presence of a child under 16, receiving concurrent terms of 5 years probation, terminated successfully two years early. He began registering twice a year under FSORNA in 1997. Mr. Doe #20 has been denied rental property for his business due to the Florida sex offender registry and lost that business due to a competitor publicizing that fact to customers. He has been threatened by a neighbor who was made

aware of Mr. Doe #20's status as a sex offender by mail sent from the City of Cape Coral, who in turn discovered his status via the FDLE website. He has also been denied entrance to both school activities involving his daughter as well as a local hospital, which refused to conduct a necessary MRI on his daughter due to Mr. Doe #20 being listed as a sex offender.

### John Doe #21

44. John Doe #21 is a 77-year old resident of Florida who pled no contest to a charge of attempted lewd act in the presence of a child under 16 years of age, receiving a withheld adjudication and sentence of five years probation, including a special condition of sex offender treatment.

45. Mr. Doe #21's probation was terminated successfully after he was found not to be a danger to reoffend. He lost his job as a construction manager for Habitat for Humanity after his presence on the Florida registry was discovered. Mr. Doe #21 must register twice a year for the rest of his life even though the registration period was 20 years when he began registering under FSORNA in 1999.

### John Doe #22

46. John Doe #22 is a 35-year old resident of Florida. In 2014 he placed an ad on Craigslist seeking adult female companionship, which was answered by a police detective who agreed to meet Mr. Doe #22 the next day, but then began

falsely portraying himself as a 14-year old girl. Despite Mr. Doe #22 rejecting the officer's proposed sexual encounter with a minor, he was ultimately arrested for soliciting a child for unlawful sexual conduct and traveling to meet a minor for illegal sexual conduct. Mr. Doe #22 pled no contest as charged after his pretrial motion to dismiss was denied, reserving his right to appeal. He was sentenced to concurrent terms of 42 months prison on each count. The Florida Fifth District Court of Appeal vacated the solicitation count based on a violation of double jeopardy. Nonetheless, he must register under FSORNA twice a year for life.

47. Due to the reporting requirements of FSORNA, Mr. Doe #22 does not travel to see relatives living in Indonesia, and has eliminated traveling out of state because of the requirement that he report to law enforcement officials in both Florida and any travel destinations. He has also not attempted to move from his current residence, a family owned property, due to restrictions imposed by private parties on his access to rental properties.

48. Mr. Doe #22 has been denied 4 separate jobs due to his status as a registered sex offender in Florida, and lost one job he already had for that very reason. Regarding his minor children, Mr. Doe #22 has not been able to attend various school functions due to being escorted off school property as a result of the FDLE sex offender website identifying him as a sex offender. Mr. Doe #22

has limited his attendance at various commercial establishments such as theme parks for fear of being identified and removed in front of his minor son, who is not aware of his father's status as a despised sex offender.

### John Doe #23

49. John Doe #23 is a 67-year old resident of Florida. In 1990, he pled no contest to familial sexual battery, receiving a sentence of 54 months community control. He is required to register four times a year for life.

50. Mr. Doe #23 has been denied countless jobs and opportunities to rent a residence, too many times for him to even remember. He has also lost jobs he was hired for after being discovered on the FDLE sex offender website listing as a sex offender. He no longer travels to out of county or out of state job conferences due to the inability to explain his absences that he must make in order to register with the local police agency of the jurisdiction where each conference was held. Likewise, due to court and school imposed conditions, Mr. Doe #23 is not able to participate in the lives of his children, as he is barred from school grounds because of FSORNA. Additionally, Mr. Doe #23 is harassed by neighbors and area police officers, and has not been able to attend college due to the hostility of fellow students and school administrators. Finally, Mr. Doe #23 does not use the Internet any more for personal

communications or work related activities because of the extensive and intrusive monitoring of his online presence by defendant FDLE.

### John Doe #24

51. John Doe #24 is a 57-year old resident of Florida. In 1989, he pled no contest to indecent assault on a child under 16 years of age, receiving a sentence of two years probation. He is required to register as a sex offender twice a year for the rest of his natural life. Mr. Doe #24 is no longer able to secure full time employment due to being on the Florida sex offender registry, as employers simply refuse to hire him for any job. He does not utilize the Internet at all due to the reporting requirements of FSORNA, and has not been able to complete his college education due to restrictions imposed by school administrators.

### John Doe #25

52. John Doe #25 is a 63-year old resident of Florida. He registers four times a year since 2013 due to multiple sex offenses dating from 1989. He has not been able to travel, use the Internet, or participate in his children's' school activities due to being a registered sex offender, even though a sociologist found him not to be a danger to reoffend.

### John Doe #26

53. John Doe #26 is a 39-year old resident of Florida who was convicted of criminal sexual conduct in Michigan in 2002. He has been denied the

opportunity to purchase or rent a home 40 times since being on the Florida sex offender registry, and has lost 5 separate jobs for the same reason. He also has not been able to obtain custody of his son due to not being able to establish a steady place to live, and is not able to use the Internet for his

job, or to even keep in touch with family and friends due to disclosure requirements of FSORNA. He is required to register four times a year for life even though he has been found not to be a danger to reoffend.

### John Doe #27

54. John Doe #27 is a 54-year old resident of Florida. He was convicted of sexual battery in 1987 and 1994, and began registering under FSORNA in 2001. He has been denied numerous jobs and opportunities to rent his own residence based on the actions of landlord and prospective employers who rely on Mr. Doe #27's presence on the FDLE sex offender website to assume he is a danger to reoffend, even though he was determined not likely to do so by a sex offender therapist.

### John Doe #28

55. John Doe #28 is 48-year old resident of Florida. He was convicted of lewd and lascivious battery in 2001 and began registering twice a year as a sex offender in 2007. Due to his presence on the Florida sex offender registry published online by FDLE under the direction of Defendant Swearingen, Mr.

Doe #28 has lost both jobs and opportunities to rent or own property based on private parties assuming he is dangerous. He is also not allowed to be involved with his children's' school activities for the same reason.

### John Doe #29

56. John Doe #29 is a 62-year old resident of Florida. In 1993, he pleaded no contest to attempted sexual battery, receiving a withheld adjudication and probationary sentence, which expired in 1998. He completed a sex offender treatment program while on probation and was determined not to be a danger to reoffend. Mr. Doe #29 has been registering under FSORNA four times a year since 1999. He has not been arrested for any criminal offense before or since the 1993 case. Mr. Doe #29 does not travel, attend school functions involving his grandchildren, or utilize social media due to the disclosure of personal information requirements of FSORNA, as administered by the Defendants.

### John Doe #30

57. John Doe #30 is a 60-year old resident of Florida. He pled no contest to second-degree child molestation in Rhode Island in 1995, receiving a probationary sentence of six years. In addition, as part of this disposition, Mr. Doe #30 successfully completed a sex offender treatment program. Mr. Doe #30 has had no criminal arrests since this plea agreement. Due to the actions

of private employers who access the FDLE sex offender website maintained by the Defendants, Mr. Doe #30 has not been able to obtain full time employment. Furthermore, Mr. Doe #30 has been restricted in the activities he can participate in with his girlfriend's children due to FSORNA, as implemented by the Defendants.

### John Doe #31

58. John Doe #31 is a 56-year old resident of Florida. In 2009, he pled guilty to lewd and lascivious molestation, receiving a ten-year probation sentence. As part of this disposition, he successfully underwent sex offender therapy. He has been registering twice annually as a sex offender under FSORNA since 2009. Mr. Doe #31 has lost both jobs and residences due to private employers and landlords discovering his listing on the FDLE website maintained by Defendants.

### John Doe #32

59. John Doe #32 is a 53-year old resident of Florida. He has been required to register as a sex offender since 2016 due to a no contest plea to lewd and lascivious exhibition, traveling to meet with a minor for sex, use of a two-way communication device to commit a felony, and use of a computer to lure a child. As a result, Mr. Doe #32 has lost 17 opportunities to rent as well as

multiple jobs due to private citizens accessing the FDLE website maintained by the Defendants.

### John Doe #33

60. John Doe #33 is a 39-year old resident of Florida. In 2005, he pled no contest to unlawful sexual activity with a 16 or 17-year old person (whom he married one month prior to sentencing), receiving a sentence of two years community control followed by six years probation. His probation terminated successfully in 2010 and included a special condition of sex offender treatment, which Mr. Doe #33 completed. He has lost numerous jobs and residences due to people falsely judging him as dangerous due to being listed on Defendant Swearingen's FDLE sex offender website. He has also been denied access to school and other activities involving child relatives due to being on the website. Mr. Doe #33 has declined to attend college due to disclosure requirements of FSORNA enforced by the Defendants and, likewise, has restricted his use of the Internet for the same reason. Despite having been found to be no threat to reoffend by sex offender therapists, Mr. Doe #33 is required to register twice a year for life. He has not otherwise been arrested for any criminal offense.

**John Doe #34**

61. John Doe #34 is a 57-year old resident of Florida. He pled no contest to sexual battery in 1993, receiving a sentence of seven years prison followed by ten years probation, which he successfully completed in 2007. He has been denied both jobs and the ability to rent a home due to the FDLE website maintained by the Defendants.

**John Doe #35**

62. John Doe #35 is a 63-year old resident of Florida. In 2003, he pled no contest to three counts of lewd and lascivious molestation, receiving concurrent sentences of ten months jail followed by five years probation, which terminated successfully in 2009. He is requited to re-register as a sex offender under FSORNA twice a year for the rest of his life. He has been prohibited from traveling internationally while performing Christian missionary work due to his status as a sex offender and has lost numerous jobs, including his professional insurance license, for the same reason. Additionally, Mr. Doe #35 has been unable to change residences, use the Internet, or attend school activities involving his grandchildren because private parties falsely assume based on his presence on the FDLE sex offender website that he is presently dangerous.

**John Doe #36**

63. John Doe #36 is a 60-year old resident of Florida. He was convicted of two counts of lewd and lascivious acts involving a 16-year old in Vermont in 1992 and was discharged from probationary sentences in 2002. He has registered in Florida as a sex offender twice a year since that date and will continue to do so for the rest of his natural life. The charges were the result of false accusations lodged against Mr. Doe #36 by his ex-wife. Even though he is not a danger to anyone, sexually, Mr. Doe #36 will be required to disclose personal information to law enforcement personnel for life.

**John Doe #37**

64. John Doe #37 is a 63-year old resident of Florida. He was convicted of lewd and lascivious molestation in 2008, completing the probationary term of his sentence in 2014. He is required to register as a sex offender twice a year for the rest of his life. Despite having been determined as not a danger to reoffend after taking part in a court-ordered sex offender therapy, Mr. Doe #37 was denied both jobs and the ability to move residences due to his inclusion on the FDLE registry.

**John Doe #38**

65. John Doe #38 is a 46-year old resident of Florida. He was convicted of unlawful sexual activity with a minor in 2008, receiving a three year probation

sentence. He is required to register twice a year for the rest of his life. Mr. Doe #38 has been denied both jobs and the ability to rent a place to live due to employers and potential landlords assuming his presence on the FDLE sex offender registry means he is a danger to reoffend. Mr. Doe #38 is forced to restrict his usage of the Internet, visitation of family members living out of county, and attendance of his children's school activities because of his presence on the FDLE sex offender website.

### John Doe #39

66. John Doe #39 is a 45-year old resident of Florida. He was convicted of sexual battery in 2000. He is required to register four times a year. Mr. Doe #39 has been denied both employment and home rentals due to being on the FDLE registry. In addition, he has been unable to attend school activities involving his children for the same reason. Finally, Mr. Doe #39 is unable to either use the Internet or attend college due to his presence on FSORNA.

### John Doe #40

67. John Doe #40 is a 27-year old resident of Florida. In 2012 he was convicted of multiple charges after answering an advertisement on Craigslist. He received concurrent sentences of five years probation, successfully completing his terms and conditions early in 2016, including sex offender treatment. He is required to re-register twice a year for the rest of his life. Mr.

Doe #40 has lost countless opportunities for employment in his chosen field, health care, the opportunity to live on his own, and the chance to attend graduate school at the University of South Florida, where he previously graduated with honors, due to his presence on the Florida sex offender registry. By being on the registry, people assume falsely that he is a danger to reoffend. On the contrary, Mr. Doe #40 has never been arrested for any criminal offense before or since the charges that arose out of a police instigated sting operation, which landed him on FSORNA.

### John Doe #41

68. John Doe #41 is a 37-year old resident of Florida. He was convicted of third degree sexual abuse in Iowa in 2001 and was discharged from probation in 2005. He is required to register as a sexual offender twice a year for the rest of his life. As a condition of his probation, Mr. Doe #41 was required to successfully complete sex offender treatment, including plethysmograph testing to determine his arousal towards children. Nonetheless, private prospective employers and/or landlords continue to reject him for jobs or rental property due to his presence on the FDLE registry falsely signaling his dangerousness.

### John Doe #42

69. John Doe #42 is a 24-year old resident of Florida. He was adjudicated as an adult for sexual battery in 2009 in Mississippi. He is required to register as a sex offender four times a year for the rest of his life. He has not been able to secure either employment nor a place of his own to live due to private persons assuming he is dangerous due to being on the FDLE registry, despite successfully completing sex offender treatment as part of his sentence.

### John Doe #43

70. John Doe #43 is a 43-year old resident of Florida. He was convicted of indecent assault on a child in Massachusetts in 2000. He is required to register twice a year for life. Additionally, he has lost jobs and rental opportunities, as well as the ability to participate in his children's school activities because of the false assumption people make about his dangerousness.

### John Doe #44

71. John Doe #44 is a 54-year old resident of Texas who is on the FSORNA registry due to a 1996 conviction for sexual performance of a child. He has lost numerous jobs and places to live due to being required to register twice a year for the rest of his life.

### John Doe #45

72. John Doe #45 is a 44-year old resident of Florida. He was convicted of sexual battery in 1995, receiving a sentence of fifteen years prison followed by five years probation. He is required to register as a sex offender four times a year for the rest of his life. Mr. Doe #45 has lost many jobs and been denied the ability to rent a residence due to being on the FDLE registry. He also is not able to use the Internet or attend school functions involving children for the same reason.

### John Doe #46

73. John Doe #46 is a 35-year old resident of Florida. He was convicted of possession of computer pornography in 2007 and began registering twice a year for life upon release from prison in 2014. He has routinely been denied jobs or the ability to rent or own property due to private persons inevitably checking FDLE's sex offender website and discovering his status. Mr. Doe #46 continues to register on the registry despite five mental health professionals determining him to be a low risk to reoffend.

### John Doe #47

74. John Doe #47 is a 53-year old resident of Florida. He was convicted of lewd and lascivious acts upon a child in 1998. He has not been able to secure or

maintain either employment or a residence due to being on the Florida sex offender registry.

### John Doe #48

75. John Doe #48 is a 57-year old resident of Florida. In 2013, he was convicted of traveling to meet a minor for sex, receiving a sentence of eighteen months prison, followed by eight years probation. He is required to register as a sex offender twice a year for life, despite being found to be a low risk to reoffend.

### John Doe #49

76. Plaintiff John Doe #49 is an 82-year old resident of Florida. In 1996, when Mr. Doe #49 was 60 years old and working in New York state as a part-time gym teacher, he accidently touched a female student's breast. As a result, he entered a plea of no contest to a charge of attempted sexual abuse, then received a sentence of one year probation. At that time, New York required persons convicted of that offense to serve ten years on its sex offender registry. Subsequently, the registration period in New York was increased to twenty years. John Doe #49's New York registration period expired in November of 2016.

77. When Mr. Doe #49 moved to Florida in 2014, he was required to register under FSORNA. When either re-registering semi-annually or providing notice of intent to travel out-of-state, he must drive 40 miles (round trip) to the St.

Johns Sheriff Office and is required to provide a full itinerary of all hotel information at every stop to and from his ultimate destinations, as well as report his presence to the local law enforcement agency of the destination jurisdiction. When Mr. Doe #49 traveled to Wyoming in 2016, he was forced to register as a sex offender in that state by the St. John's Sheriff's Office. Additionally, Mr. Doe #49 was forced to spend $3000 to hire a lawyer to secure a judicial order removing him from the Wyoming sex offender registry. Furthermore, Mr. Doe #49 has lost $1000 booking an out-of-the-country cruise due to being told he must provide the St. Johns Sheriff's Office with his travel itinerary 30 days in advance, and in 2017 had to spend $1000 traveling back to Florida to register after having received free concert tickets for a show in Massachusetts.

78. Deputies from the St. Johns and Broward Sheriff's Offices periodically check on Mr. Doe #49's presence at the residential addresses he has listed on the FSORNA registry; at those times, these deputies scream Mr. Doe #49's name and sexual offender status in the presence of his neighbors. As a result, Mr. Doe #49 is hesitant to invite guests into his residences. Mr. Doe #49 suffers from neuropathy and meningioma of the brain, and is confined to a wheelchair when traveling in airports.

79. Mr. Doe #49's only arrest since the New York offense described in paragraph 7, *supra.*, was for an unknowing failure to properly register a leased vehicle under FSORNA in 2017, resulting in a no contest plea to attempted failure to register and payment of court costs. Nonetheless, Mr. Doe #49 is required by FSORNA to register as a sexual offender for life, despite successfully completing sex offender therapy as a condition of probation.

### John Doe #50

80. John Doe #50 is a 61-year old resident of Florida who was convicted of attempted sexual battery in 1992. He began registering four times a year for life in 1995. He has lost numerous jobs and chances to own or rent property because of his status as a registered sex offender. He has also been unable to complete his college education or attend school activities with his grandchildren for the same reason.

### John Doe #51

81. John Doe #51 is a 60-year old resident of Florida. He was convicted of possession of materials depicting sexual conduct by a child, then was sentenced to two years community control followed by eight years probation because Mr. Doe #51 was found to be a low risk to reoffend. Nonetheless, he is required to register twice a year for life and has lost countless chances for employment due to being listed as a sex offender by FDLE. As his job requires

extensive use of the Internet, Mr. Doe #51 has lost thousands of dollars due to Internet usage restrictions and also had to give up his church volunteer employment because the church falsely assumed that he was dangerous because he is on the FDLE website.

### John Doe #52

82. John Doe #52 is a 64-year old resident of Florida. He was convicted of one count of sexual battery in the 1990s, and now has to register four times a year for life. He has been denied work and rental housing too many times to recall, always because of his listing on the FDLE sex offender registry.

### John Doe #53

83. John Doe #53 is a 63-year old resident of Florida. He was convicted of sexual battery on a child as well as lewd and lascivious conduct on a child in 1993, and is required to register 4 times per year for life. He has been denied jobs due to being on the FDLE sex offender website.

### John Doe #54

84. John Doe is a 49-year old resident of Florida. He was convicted of rape of a child in the state of Washington in 1993. He is required to register twice a year for life and has been denied numerous jobs due to being listed on the FDLE sex offender registry.

**John Doe #55**

85. John Doe #55 is a 70-year old resident of Florida. In 1992, he was convicted of two counts of lewd and lascivious conduct on a child and was sentenced to four years probation. He is required to register twice a year for life and has been denied the opportunity to rent property because of his presence on the FDLE website.

**John Doe #56**

86. John Doe #56 is a 71-year old resident of Florida. He was convicted of lewd and lascivious exhibition in 2005 and is required to register as a sex offender twice a year for life. He has been denied rental property at least forty times since being listed on the FDLE website. He has been found not to be a risk to reoffend as part of his probationary conditions.

**John Doe #57**

87. John Doe # 57 is a 57-year old resident of Florida. He has had to register twice a year for life since receiving a probation sentence for a child pornography conviction in Illinois in 2013. As part of that sentence he successfully underwent sex offender treatment.

**John Doe #58**

88. John Doe #58 is a 49-year old resident of Florida. He pled guilty to lewd and lascivious conduct in 1996, receiving a probationary sentence from which he

was successfully discharged early from in 2003. He has lost jobs and residences due to employers and landlords falsely assuming he is dangerous due to being listed on the FDLE website. He has also not been able to participate in his children's school activities or attend college for the same reason.

### John Doe #59

89. John Doe #59 is a 58-year old resident of Florida. He was convicted of sexual battery in 2013, receiving a ten-year probationary sentence. He has not been able to participate in the school or social lives of his grandchildren due to limits imposed by private parties based on their false assumption Mr. Doe #59 is dangerous.

### John Doe #60

90. John Doe #60 is a 40-year old resident of Florida. He was falsely convicted of attempted sexual battery in 1996, receiving a probationary sentence. He has been denied residential housing, the opportunity to attend college, and to participate in activities with his children due to private parties falsely assuming his dangerousness as a result of being listed in the FDLE sex offender website.

## V-GENERAL FACTS

## Florida's Sex Offender Registration Scheme

91. In Florida, every person who has been convicted of an extensive list of offenses must register for life as a sex offender. As of September 2015, 55,374 persons classified as sexual offenders were listed on Florida's sex offender registry. Registration is mandatory once a qualifying conviction is entered, and the duty to register applies without any individualized assessment of the risk to reoffend.

92. Registrants must disclose intimate details of their lives with FSORNA's public registry. In doing so, they must report in person to their local sheriff's office within 48 hours of release from prison or moving to a new address, and provide the following information for inclusion in the registry: name, date of birth, social security number, race, sex, height, weight, hair and eye color, tattoos or other identifying marks, fingerprints, palmprints, photographs, employment information, address, current or future temporary residence, make-model-color-vehicle identification number (VIN)-license tag numbers of all vehicles owned, all home telephone numbers and cellular telephone numbers, all electronic mail addresses and all internet identifiers, date and place of each qualifying conviction and a description of those crimes, information about college enrollment and professional licenses held, and a copy of any passport. This information must be promptly updated when it changes. Failure to comply with any of these requirements is a third degree

felony, punishable by up to five years in prison and a $5,000 fine. This plethora of information is not kept confidential. Instead, FDLE is statutorily mandated to make all registrant information public via Internet access, except for social security numbers and portions of the registrant's motor vehicle record. Nor are FDLE or any other Florida law enforcement officers restricted in their use of registry information. On the contrary, FDLE maintains an online system allowing the public to search for information on any registered sex offender. Additionally, FDLE provides automatic notification of registration information to any member of the public who signs up for that service, including information not displayed on the public online system. Finally, FDLE provides registry information concerning email addresses and Internet identifiers to commercial social networking websites, allowing these websites to screen potential users and terminate registrants' accounts, without fear of civil liability.

## VI-HISTORICAL EVOLUTION OF FSORNA

93. FSORNA became law effective October 1, 1997 with the passage of Laws of Florida, Chapter 97-299, section 8, the "Public Safety Information Act." The preamble to that act stated that the Florida Legislature intended to "enhance public access to information regarding certain sex offenders by

creating a public-access telephone number for releasing this information. . . .

. .to authorize public or community notification of this information."

94. Section 8 of Chapter 97-299 enacted Florida Statutes, section 943.0435, which required all sexual offenders to report certain information to the Florida Department of Law Enforcement (FDLE). "Sexual Offender" was defined as anyone convicted by plea or trial, whether or not adjudication was withheld, and sanctioned by fine, probation, parole, community control, conditional release, control release, or incarceration in state or federal prison, private correctional facility, or local detention facility, on or after October 1, 1997, for the following offenses: luring or enticing a child (section 787.025, Florida Statutes), sexual battery (section 794.011, Florida Statutes), procuring for prostitution a person under 18 years of age (section 796.03, Florida Statutes), lewd or lascivious offenses upon a person under 19 years of age (section 800.04, Florida Statutes), sexual performance by a child (section 827.071, Florida Statutes), providing pornography to minors (section 847.0133, Florida Statues), computer pornography/traveling to meet a minor for sex (section 847.0145, Florida Statutes), or analogous offenses committed, attempted, solicited, or conspired to be committed in another jurisdiction. Chapter 97-299 required sexual offenders to report in person to either FDLE or the elected Sheriff in the county of their permanent or temporary Florida residence within

48 hours of establishing that residence (permanence was defined as living at the relevant address for two weeks or more, while temporary was defined as doing so for less than two weeks).   The information required to be provided by Florida sexual offenders included:

- Name;

- Date of Birth;

- Race;

- Sex;

- Height;

- Weight;

- Hair and eye color;

- Tattoos or "other identifying marks;"

- Address;

- Date and place of each qualifying conviction, as well as a "brief description" of these crimes; and

- Photographs and/or fingerprints

Additionally, a sexual offender was required to report in person to a Department of Motor Vehicle (DMV) office within 48 hours of any change of address in his or her permanent or temporary residence, self-identify as a sexual offender to DMV, and provide all information listed above upon DMV

request. Furthermore, a sexual offender was required to make an in person report to DMV for all future driver license renewals, even if his or her address had not changed. The penalty for noncompliance with the FSORNA information disclosure requirements was five years in prison as a third degree felony, section 943.0435(6), Florida Statutes (1997). No additional reports were required of sexual offenders under FSORNA. However, starting with Laws of Florida, Chapter 98-81, section 7, effective October 1, 1998, the Florida Legislature began a process of amending section 943.0435 that continues to this day. In Chapter 98-81, the offenses of kidnapping or false imprisonment of a child under 13 years of age (where the victim was not the defendant's child) (sections 787.01 and 787.02, Florida Statutes) and lewd or lascivious offenses committed in the presence of an elderly person (section 825.1025, Florida Statues) were added to the previous list of offenses subjecting the criminal defendant to FSORNA. The definition of conviction was expanded to include pleas of either guilty or no contest, and offenses subject to registration were also expanded to include military convictions (court martials based on same), and specifying that "out of state" convictions meant "any state of the United States."

95. Chapter 98-81 also changed the term "establishes" a residence to "establishes or maintains," and added social security numbers, occupations, place of

employments, rural route addresses or P. O. boxes, and vehicles and/or boats (ID numbers and descriptions) to the information to be disclosed in registering or re-registering under FSORNA. Also added was a new provision that a sexual offender who "intends" to change address inform the Sheriff of his or her current residence within 48 hours, and include in that disclosure the registrant's intended new address.  If the sexual offender then changes his or her mind as to the previous intent to move, he or she must then re-inform the Sheriff of his or her change of heart, again within 48 hours, or face punishment of five years for the initial failure to disclose and fifteen years for the second failure to do so. Lastly, Chapter 98-81 added a lifetime duration requirement for sexual offender reporting, unless the sexual offender's civil rights were restored, a full pardon granted by the Governor and the Cabinet, or any qualifying convictions were set aside in post-conviction proceedings. Sexual offenders were also allowed to petition for removal from the Florida sexual offender registry twenty years after release from confinement, supervision, or sanction, as long as he or she had no arrests for any felony of misdemeanor offense(s).  The prosecuting state attorney office would have to be notified of this petition, and the trial court had discretion to grant or deny de-registration.

96. Laws of Florida, Chapter 2000-207, section 3, effective July 1, 2000 amended FSORNA by excluding from its list of qualifying offenses falsely accusing

persons "in positions of authority" or "government agents" (section 794.011(10), Florida Statutes) or administering MPA to convicted sex offenders (section 794.0235) from its list of qualifying offenses. A 48 hour initial reporting requirement was added for sexual offenders released from a private correctional facility and for reporting changes in the offender's name due to marriage or other legal process. In addition, the 48 hour reporting requirement as to a sexual offender's intent to move to another state needed to be made in person. Finally, the possibility for deregistration after a sexual offender's civil rights were restored was dropped, but subsection (11) (b) was added to section 943.0435, allowing a sexual offender 18 years of age or less to petition for deregistration if adjudication of his or her qualifying offense was withheld and ten years had passed since supervision had ended without a subsequent arrest for a felony or misdemeanor offense.

97. Laws of Florida, Chapter 2000-246, section 1, effective October 1, 2000, added to the list of qualifying offenses lewd or lascivious exhibition in the presence of a person under 16 years of age, either live or over a computer online service (section 800.04(7), Florida Statutes).

98. Laws of Florida, Chapter 2002-58, section 3, effective July 1, 2002, added transmitting pornography via electronic device (section 847.0137, Florida Statutes) and doing so to a minor (section 847.0138, Florida Statues) to the

list of qualifying offenses. Significantly, Chapter 2002-58 also required persons who had been designated a sexual offender out of state based on an offense that would have qualified the person as a sexual offender if committed in Florida, and who was thereby required to register out of state as a sexual offender, to do so in Florida. In addition, registration was required for sexual offenders who were enrolled or employed ("carrying on a vocation") at any "institution of higher learning," which was further defined as any community college, college, state university, or independent post-secondary institution, as well as any change in enrollment or employment status. The qualification for juvenile deregistration was changed to apply to sexual offenders 18 years old or less whose victims were 12 years old or older, where adjudication was withheld, and the sexual offender had not been arrested for any felony or misdemeanor offense for ten years. Deregistration for adult sexual offenders was authorized where a court in the state where the offender's out of state qualifying offense arose had issue an order vacating that offense, or the sexual offender had been removed from registering in the other state by operation of law, so long as that person did not otherwise meet Florida's remaining requirements for registration. Finally, the Legislature included a statement on FSORNA, subsection (12) of section 943.0435, that "sexual offenders, especially those [whose offense] involved children, pose a high risk of

reoffending, and disclosure of information regarding sexual offenders promotes public safety, and is not a punishment [since] sexual offender designation is just a status based on prior convictions."

99. Laws of Florida, Chapter 2004-371, section 2, effective July 1, 2004, added a provision that where a sexual offender "vacates" a permanent residence and thereafter fails to establish or maintain another residence (permanent or temporary), the sexual offender must report in person within 48 hours to FDLE or the Sheriff the address he or she resides at until a new address is established. Chapter 2004-371 also added a provision for venue for prosecutions based on an alleged failure to register, and specified that an arrest for such an offense constituted "actual notice" of the requirement to register as a sexual offender. Furthermore, failure to immediately register after arrest is sufficient grounds for a second prosecution for failure to register, and to assert lack of notice as a defense to such a prosecution the sexual offender would be required to immediately register, and would be barred from raising lack of notice in any subsequent prior failure to register prosecution.

100. Laws of Florida, Chapter 2005-28, section 9, effective September 1, 2005, made it a crime for persons to assist a sexual offender in not registering, and added the requirement that sexual offenders register twice a year, with sheriff offices given authority to determine the "appropriate times and days for

reporting." Finally, this amendment to FSORNA reaffirmed that any changes to the information must be disclosed.

101. Laws of Florida, Chapter 2006-200, section 3, effective July 1, 2006, added as qualifying offenses selling or buying minors into sex trafficking or prostitution (section 796.035, Florida Statutes) and sexual misconduct by employees (section 985.4045(1), Florida Statues), and added "career center" to the list of "higher educational institutions" for which a sexual offender must register when enrolled or employed.

102. Laws of Florida, Chapter 2007-5, section 159, effective April 13, 2007, changed the statutory designation of the qualifying offense of sexual misconduct by an employee from 985.4045(1) to 985.701(1).101. Laws of Florida, Chapter 2007-143, section 10, effective October 1, 2007, added a sexual offender's electronic mail address and instant message name as information required to be disclosed to FDLE or the Sheriff of the offender's residence; violations were a third degree felony.

104. Laws of Florida, Chapter 2007-207, section 4, effective July 1, 2007, required all sexual offenders be issued a driver license by the Florida DMV that complied with section 322.141(3), Florida Statues, listing "943.0435, F. S." on the front of the sexual offender's license.

105. Laws of Florida, Chapter 2007-209, section 2, effective July 1, 2007, added "guardians" as persons excluded from the qualifying offenses of kidnapping or false imprisonment (previously only parents of the minors involved in those offenses were excluded), and additionally added as qualifying offenses sexual activity by a person 24 years or older with persons 16 or 17 years of age (section 794.05, Florida Statutes) and deleted as a qualifying offenses administering MPA to a sexual offender as treatment (section 795.0235, Florida Statutes) and traveling to meet a minor for sex (section 847.0135(4), Florida Statues). This amendment to FSORNA added the requirement that on or after July 1, 2007, juveniles adjudicated delinquent for the following offenses would have to register in Florida as sexual offenders, if the juvenile at the time of adjudication was 14 years of age or older, and the judge in his or her case made determinations as to the victim's age, force or coercion in committing the charged delinquent acts, and whether unclothed genital touching occurred:    sexual battery (section 794.011, excluding subsection (11)), lewd or lascivious battery on a person less than 16 years of age (section 800.04(4)(b), Florida Statutes), and lewd or lascivious molestation, where the juvenile offender was less than 18 and the victim less than 16, but older than 12 (section 800.04(5)(d), Florida Statutes). Sexual offender registration continued to be required for the life of the sexual offender, unless relief was

granted under section 943.04354, Florida Statutes, the "Romeo & Juliet" Act. The time period for which deregistration could be sought by adult offenders was extended from 20 years to 25 years, and the following qualifying offenses were excluded from deregistration: kidnapping or false imprisonment (sections 787.01 or 787.02, Florida Statues), sexual battery (section 794.011, Florida Statues), lewd or lascivious battery, where a court found the victim was under the age of 12 or the sexual activity was accomplished with force or coercion (section 800.04(4)(b), Florida Statutes), and lewd or lascivious molestation, where the judge finds the acts involved unclothed genital contact (section 800.04(5)(b)(c)2., Florida Statues). Significantly, juvenile sexual offender deregistration for offenders 18 years old or less where the victim was 12 years old or older, and no crimes had been committed by the offender for a period of ten years, was eliminated. The general frequency of reporting was increased to four times a year for the following qualifying offenses: kidnapping or false imprisonment, where the offender was not a parent or guardian of the minor (section 787.01 and 787.02, Florida Statutes), sexual battery (section 794.011, Florida Statutes), lewd or lascivious battery or molestation (section 800.04(4)(b)(5)(b)(c)1.2.(d), Florida Statues), or attempts, solicitations, or conspiracies to commit those offenses, or similar crimes elsewhere.

106. Laws of Florida, Chapter 2009-194, section 3, effective July 1, 2009, added as a qualifying offense owners/operators of computer services allowing the sexual enticement of minors (section 847.0135(6), Florida Statutes). That amendment also added home and cellphone numbers to the information to be disclosed.

107. Laws of Florida, Chapter 2010-92, section 4, effective May 26, 2010, adds transient addresses as information to be disclosed, then updated.

108. Laws of Florida, Chapter 2012-19, section 4, effective October 1, 2012, added video voyeurism (section 810.145(8), Florida Statues) as a qualifying offense.

109. Laws of Florida, Chapter 2012-97, section 11, effective July 1, 2012 adds human trafficking (section 787.06(b)(d)(f)(g), Florida Statues) to the list of qualifying offenses for sexual offender registration.

110. Laws of Florida, Chapter 2013-116, section 11, effective July 1, 2013, adds fingerprints and photographs as information required to be disclosed as part of a sexual offender's reporting requirements.

111. Laws of Florida, Chapter 2014-4, section 10, effective October 1, 2014, adds lewd or lascivious battery (victim over 12 years of age but under 16) and drops lewd and lascivious battery (encouraging, enticing, or forcing sexual activity

by person under 16) as qualifying offenses for juveniles to be covered by FSORNA. Lewd and lascivious battery (victim over 12 but under 16) was added to the list of offenses for which deregistration was allowed, but sexual offenders with that qualifying offense must register four times a year.

112. Laws of Florida, Chapter 2015-4, section 5, effective October 1, 2014, added sexual misconduct with a developmentally disabled victim (section 393.135(2), Florida Statutes), sexual misconduct by an employee (sections 394.4593(2) and 916.1075(2), Florida Statues) to the list of sexual offender qualifying offenses. That amendment also added "Internet Identifiers," palmprints, make, model, color, VIN, and tag number of all vehicles owned by a sexual offender, passports, all documents concerning the offender's immigration status, and professional licenses as information subject to disclosure. In addition, volunteers were added to the list of persons attending institutions of higher learning who must report if a sexual offender, and changes in vehicle information must be reported as well. Furthermore, sexual offenders must now provide FDLE with criminal and correctional records, nonprivileged personnel and treatment records, and evidentiary genetic markers where available. Additionally, transients must report within 48 hours of establishing a transient address, and every 30 days thereafter, and all sexual offenders must report 21 days from any foreign travel plans. Laws of Florida,

Chapter 2014-160, section 26, effective October 1, 2014, added human trafficking to the list of qualifying offenses (section 787.06(3)(h), Florida Statues).

113. Laws of Florida, Chapter 2016-24, sections 10 and 51, effective October 1, 2016, added racketeering to the list of qualifying offenses, so long as the judge found racketeering activity involved at least one sex offense listed in section 943.0435(1)(a).

114. Laws of Florida, Chapter 2016-104, section 3, effective October 1, 2016, deleted the exclusions of parents and guardians from the kidnapping and false imprisonment qualifying offenses, and required any changes to home cellphone numbers, employment information, and sexual offender statuses at institutions of higher learning be reported. Moreover, international travel plans and destinations of sexual offenders must be reported as soon as possible before departure where not know 21 days in advance, and flight numbers and return dates must be provided. Also, deregistration now excludes the offense of lewd or lascivious acts in the presence of an elderly victim (section 825.1025, Florida Statues, and a sexual offender must report as a volunteer at an institution of higher learning.

115. Finally, Laws of Florida, Chapter 2017-170, section 2, effective June 26, 2017, expanded the definition of "Internet Identifiers" to include "each Internet Identifier's" corresponding "homepage or application software name."

## VII- IMPACT OF FSORNA ON THE PLAINTIFFS

116. FSORNA imposes extensive obligations, disabilities, and restraints upon all registrants, including plaintiffs, subjecting them to continuous reporting, surveillance, and supervision. FSORNA also severely limits plaintiffs' ability to find housing and employment, secure an education, travel, engage in free-speech activities on the Internet, avoid harassment and stigma due to their status as registered sexual offenders, and to understand the labyrinth requirements of FSORNA. Additionally, registration under that statute is used by private parties to limit or bar plaintiffs from numerous activities available to the public, such as access to property, goods, or services, or to direct the upbringing of their children.

## (A) FALSE STIGMATIZATION

117. FSORNA assumes that all registrants are at high risk to reoffend, towards both the public in general and against minors in particular, and effectively communicates this belief with its extensive reporting and other supervision requirements. However, the vast majority of persons convicted of an offense

for which FSORNA designates one as a sexual offender will not commit any sex offenses in the future. John Doe #s 1-2, 6-15, and 18-19 have been found not to be at risk to re-offend after undergoing sexual offender therapy as part of their sentences.

118.   FSORNA creates and perpetuates the stereotype that such persons are at high risk of reoffending, especially against minors, even though FSORNA requires no individualized assessment as to dangerousness of plaintiffs or anyone else on the Florida sexual offender registry. This stigmatization has resulted in direct loss of constitutional rights by the plaintiffs. In addition, plaintiffs have been ostracized by family and friends, and have been routinely been denied housing, employment, and social opportunities due to the false public perception of their dangerousness. Taken together, the direct and indirect effect of the false assertion that plaintiffs are *per se* dangerous has effectively prohibited plaintiffs and persons similarly situated from participating in public life.

### (B) Reporting, Surveillance, and Supervision

119.   Under FSORNA, all registrants are required to provide the following personal information to the sheriff of the county of their residence within 48 hours of their release from incarceration or supervision due to criminal sentencing:

name, date of birth, height, weight, color of hair and eyes, sex, race, tattoos or other identifying marks, address, social security number, photograph, identifying information for all motor vehicles and boats, enrollment, occupation, or volunteer information for any "institute of higher education" attended, paid employment information, photographs, identity and descriptions of all criminal offenses for which registration is required, all passports possessed, and all Internet identifying information. Additionally, if a registrant changes any of this information, he or she must report these changes within 48 hours, and must report any intended or actual movement from a residence, whether out of state or internationally, and must register with authorities in those jurisdictions if sex offender registration for the person's Florida offenses triggers a requirement to register in those locations.

120. Furthermore, the Sheriff in the county where a FSORNA registrant lives is authorized to verify the registrant's address at any time. Each alleged failure to comply with the numerous reporting requirements of FSORNA is punishable as a third degree felony by up to five years in prison and $5000 fine.

121. There is no good cause exception to these reporting requirements, and FSORNA mandates that law enforcement officers arrest any person alleged to be in violation of that statute. Moreover, FSORNA makes it a felony offense

for any non-registrant to fail to report a known violation of that law, thereby effectively commandeering the public in FSORNA's surveillance regime in a manner not applicable to any other criminal offense in Florida.

## (C) BURDENS ON HOUSING

122.  Due to the false stigmatization described in paragraphs 117-118, *supra.,* many landlords will not rent to registrants and many homeowners are unwilling to sell to them, both of which severely limits the housing options of persons under the thumb of FSORNA. John Does # 2, 4-6, 9, 11-17, and 19 have all been denied housing strictly due their presence on the FSORNA sexual offender registry. Additionally, many registrants have been required to relocate by landlords upon discovering a person's presence on the Florida sexual offender registry, even when living with family members, due to the impact of Florida Statues, Section 775.215, which prohibits persons convicted of violations of sections 794.011, 800.04, 827.071, 847.0135(4), or 847.0145 involving victims less than 16 years of age from residing within 1000 feet of a school, daycare facility, park, or playground. The combined impact of sections 775.215 and 943.0435 has been to dramatically increase homelessness among registrants, even though no correlation exists between residential restrictions and sexual offender rates of reoffending. On the

contrary, housing restrictions exacerbate recidivism risk factors by effectively denying sexual offenders the ability to reintegrate into society.

### (D) EMPLOYMENT

123. FSORNA restricts employment in several discrete ways. First, registrants suffer intense discrimination both in hiring and in often being fired when employers learn they are on the registry. John Does # 2, 4-6, 11-17, and 20 have all either lost jobs or been denied employment due to employers accessing the FDLE website, then assuming each Doe's presence on the website was indicative of a danger to reoffend. This discrimination and unfair treatment is not simply a collateral consequence of the state's publication of information, but is the direct result of the false stigmatization of all registrants as a significant danger to young children and adults due to presumed recidivism. Furthermore, the state pushes this information out into the community in a manner unlike any other category of criminal offender, due to the publication of sexual offender disclosures worldwide via the internet, and through its toll-free telephone number which it pushes as an option for citizens to acquire even more information on registrants then is available on the public website. Finally, restrictions on Internet access unfairly burden registrant's ability to find employment, since use of social media and many websites such as LinkedIn are subject to constant ongoing disclosure. As most

job seeking today is performed via the Internet, these unfair and unnecessary hurdles effectively restrict registrant's access to jobs.

### (E) CHILD REARING

124.  FSORNA significantly impairs plaintiffs' ability to direct the education and upbringing of their children, since the requirements of disclosure of Internet identifying information restricts their ability to monitor the social lives of their children during those times the children are using social media and internet applications. As a result, they cannot effectively observe their children's social media habits, assist with homework, or perform other supervisory and instructional tasks that require access to internet-based programs. In addition, John Does # 2-7, 10-12, 14, 17, and 20 have all been denied access to school grounds to attend scholastic and athletic functions involving their children or grandchildren simply because of their presence on the FDLE sexual offender website.

### (F) EDUCATION

125.  FSORNA places significant restrictions on registrant's ability to further their education, as John Doe #s 4, 12, and 17 have been denied enrollment at institutions of higher learning due to their registrant status. Furthermore, Internet restrictions prevent use of online classes to fulfill academic requirements for graduation.

## (G) INTERNET IDENTIFIERS

126. The Internet Identifier provision of FSORNA states that all registrants "shall register all electronic mail addresses and Internet identifiers with [FDLE]. . . before using such electronic addresses and Internet identifiers." Fla. Stat., section 943.0435(4)(e)(1). "Electronic mail address" is defined as a "destination, commonly expresses as a string of characters, to which electronic mail may be sent or delivered." Fla. Stat., section 668.602(6) (section 943.0435(1)(c) incorporates definition found at section 668.602(6)). "Internet Identifier" is defined at section 775.21, adopted at section 943.0435(1)(e), as "all electronic mail, chat, instant messenger, social networking, application software, or similar names used for Internet communication. . . , [and] includes, but is not limited to, all website uniform resource locators (URLs) and application software, whether mobile or non-mobile, used for Internet communications, including anonymous communications, through electronic mail, chat, instant messages, social networking, social gaming, or similar programs and all corresponding usernames, login, screen names and screen identifiers associated with each URL or application software. . . [but excludes] application software used for utility, banking, retail, or medical purposes."

127. These reporting requirements for Internet usage have effectively banned registrants from using the Internet, shutting down their Internet-based businesses, and otherwise leaving them unconnected to the outside world. Furthermore, these reporting requirements are imposed on all registrants regardless of their risk of reoffending, or their lack of use of the Internet to commit the crimes for which their registration requirements under FSORNA originally arose.

128. Compliance with the Internet Identifier provision is effectively impossible because it requires registrants to constantly report the URLs of websites they are about to visit, before they visit them, if the website is used for Internet communication. A URL is the specific address of a webpage; it includes the site's protocol, its domain name, suffix, directories, and specific page. It will most likely be an extended string of characters. A casual Internet user could visit dozens of websites each day, and in the course of following the hyperlinks on those websites, encounter many more URLs. There is no possible way to know these URLs prior to visiting these sites and, even if it were possible, the act of constantly having to record the URLs, then transmitting them to FDLE on an ongoing basis, renders Internet usage impossible as a practical matter.

129. Additionally, registrants are effectively banned from engaging in anonymous online speech, due to their constant and ongoing need to register usernames with FDLE, which then discloses this information to the public through their toll-free telephone service. Due to registrants being members of the one class of persons for whom bigotry is socially accepted, sexual offenders after revealing that status expose themselves to harassment, retaliation, and threats of physical violence for expressing themselves in public, on any subject. Consequently, to avoid these predictable results, plaintiffs and other registrants simply avoid the Internet.

130. The Internet Identifier provisions of FSORNA do nothing to prevent Internet-facilitated sex offenses against minors, as it applies to all registrants, regardless of whether Internet use was factually involved in the registrant's offenses. Contrary to stereotypical urban legend, sex offenders actually have the lowest rate of re-offense of any class of offender, especially the longer they are in the community. Moreover, the assessment of actual risk for an individual offender is easily accomplished by use of an assessment test called Static 99R, universally utilized by experts in the field of treatment for sex offenders, including the State of Florida in civil commitment proceedings under the Jimmy Ryce Act. The real risks to children come not from random

strangers, but rather from people they already know-93% of all sex offenses committed against minors are by such persons.

131.  Based on the allegation found in paragraphs 100-104, *supra,* plaintiffs assert the provisions in FSORNA concerning the Internet violate their First Amendment right to engage in commercial, political, and social free speech. Specifically, John Doe #s 2-6, 9, 12, 14-17, and 20 all limit their use of the Internet due to FSORNA.

### (H) RIGHT TO TRAVEL

132.  The plaintiffs' status as FSORNA registrants severely restricts their fundamental right to travel. They must provide advance notice when they travel to a different county in Florida, when they leave the state for any reason, and for international travel. Furthermore, when traveling they are subject to any restrictions and reporting requirements imposed by the jurisdictions of their destination. Because sex offender laws are exceedingly complex and vary from place to place, it is functionally impossible to obtain reliable information as to reporting requirements or prohibited activity in the travel destinations. This causes registrants to involuntarily limit their fundamental right to travel. John Does #1-2, 4-6, 9, 11-15, and 17 all have chosen not to

travel beyond the county of their residences due to the itinerary disclosures requirements of FSORNA.

## VII-VAGUENESS, STRICT LIABILITY, IMPOSSIBILITY

133. Plaintiffs are further harmed by FSORNA due to the vagueness of many provisions of that statute, and/or the pervasiveness of restrictions, rendering compliance with the law literally impossible due to a lack of knowledge of what FSORNA requires or the capacity to comply. Reporting requirements are vague as to what information must be reported, or when reported. Moreover, registrants are strictly liable for noncompliance, even when doing so is impossible or registrants honestly lack knowledge of what is required of them.

## VIII-FACTUAL ALLEGATIONS: FSORNA IS NOT RATIONALLY RELATED TO THE GOAL OF PUBLIC SAFETY

134. The avowed purpose of FSORNA is to "enhance public access to information regarding certain sexual offenders by creating a public-access telephone number for revealing this information [and] intends to authorize public or community notification of this information." The idea that FSORNA will promote public safety is based on the assumption that sex offender registration will reduce recidivism by convicted sex offenders and thus the risk to the

public. However, empirical research has found that public registries increase, rather than decrease, recidivism. This research shows that the more people a state subjects to public sex offender registration based on prior offenses rather than individualized assessments of risk, the more sex offenses are committed against all types of victims. This occurs because sex offender registration and its consequences exacerbates risk factors for recidivism, including lack of employment and housing, preventing reintegration into the community.

135. Housing instability is consistently correlated with higher criminal recidivism, and therefore residency restrictions are likely to increase rather than decrease sexual reoffending. Also, requirements that interfere with employment and child-rearing activities undermine the avowed public safety rationale of sex offender registration laws, since policies that ostracize and disrupt the stability of sex offenders' lives are counterproductive to increased public safety. Therefore, FSORNA is not rationally related to the public safety goal it purports to serve.

## IX-FACTUAL ALLEGATIONS:  THE REQUIREMENTS OF FSORNA BEAR NO REASONABLE RELATIONSHIP TO THE RISK THAT INDIVIDUAL REGISTRANTS POSE TO THE COMMUNITY

136.  FSORNA assumes that all individuals convicted of sex offenses pose a great risk to public safety, justifying lifetime supervision. However, the vast majority of new sex offenses are committed not by registered offenders, but instead by individuals without prior sex offenses. In fact, most sex offenders do not reoffend sexually. First time sex offenders are significantly less likely to reoffend than those with multiple sexual convictions, and offenders over the age of 50 are less likely to reoffend than younger offenders. The risk for reoffending is reduced by 50% when a person has spent 5 to 10 years offense-free in the community, and that risk continues to decline the more time the person spends offense-free in the community. As a result, requiring registration for life is literally unnecessary.

137.  Additionally, FSORNA misidentifies the source of risk. Ninety-three percent of child sexual abuse cases are the result of interaction with family members or acquaintances, not strangers listed on any sex offender registry. As a consequence, FSORNA bears no rational relationship to the risks posed by individual registrants.

# X- FSORNA VOLATES THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION

138. Collectively, the burdens described above in paragraphs 108-111, *supra.*, demonstrate a *sub silentio* legislative intent to punish FSORNA registrants who have completely served their already-imposed criminal sentences, in violation of the Ex Post Facto Clause of the United States Constitution. For one thing, FSORNA is located in the section of Florida Law involving criminal substantive law and procedural practice, and the law itself is executed by law enforcement officials, namely local county sheriffs and FDLE. Moreover, violations of section 943.0435 result in criminal sanctions of up to five years imprisonment. Additionally, the Florida Legislature has repeatedly amended the original enacting statute, Chapter 97-299, section 8, increasing its burdens without adequate legislative findings supporting these harsher restrictions and requirements. In fact, FSORNA directly and indirectly inflicts traditional punishment.

139. First, FSORNA reporting requirements as to registrant's housing information, combined with the residency restrictions found in Fla. Stat., section 775.215, force registrants to live far away from most urban population centers in Florida, and the same combination of restrictions and reporting requirements for employment preclude acceptance of many jobs. The net result is to

effectively banish registrants from living and working where they desire. Banishment is recognized as an ancient form of punishment.

140. Next, FSORNA effectively punishes registrants via shaming, through its mislabeling all registrants as dangerous to other members of the public via actively publicizing personal identifying information about registrants over the world-wide web. This has the effect of subjecting registrants to a unique system of state and private controls over all aspects of a registrant's life, and thereby denies them various fundamental rights and renders them vulnerable to private vigilante harassment by the public based on the false premise that all registrants are inherently dangerous. John Does #2 and 20 have both been threatened with physical harm after being identifies as sexual offenders by local police officers.

141. Moreover, the restrictions imposed by FSORNA are at least as burdensome, and more burdensome in some respects, as conditions of probation or parole.

142. FSORNA likewise imposes affirmative disabilities on its registrants, in terms of finding or maintaining employment and stable housing arrangements, and having to appear in person to report all information required of that statute to law enforcement authorities, who are granted unlimited discretion to confirm the information provided, at their whim, without reasonable grounds to

suspect wrongdoing. Moreover, registrants are precluded from effectively accessing the Internet for any legitimate purpose.

143. FSORNA advances the traditional aims of punishment: retribution and deterrence. Registry restrictions and information disclosure requirements are imposed solely due to the fact of conviction without regard to extenuating circumstances or future dangerousness. These restrictions apply to offenders who have never committed an offense against a minor, or a sex offense against anyone.

144. Nor does FSORNA bear a reasonable relationship to a non-punitive purpose, since the law takes no account of an offender's actual dangerousness towards minors or other persons, and its provisions do not effectively reduce reoffending.

145. FSORNA is also excessive in relation to its putative purpose, since the extent and duration of registration requirements are substantially greater than necessary to advance its purpose. Registration is required long past the time when offenders are still a significant risk for reoffending, and the direct and indirect barriers to housing and employment, as well as the exercise of fundamental liberties, do not reasonably reduce the risk of reoffending. There is no reasonable fit between the restrictions imposed and the class of persons

subject to the restrictions. As a result, FSORNA violates the Ex Post Facto Clause of the United States Constitution as to John Doe #s 1-34.

## XI-CLASS ALLEGATIONS

146. Pursuant to Federal Rule of Civil Procedure 23(b)(2), the named plaintiffs seek certification of this complaint as a class action. The named plaintiffs seek to represent two classes in this litigation:

> * **Class One:** All persons currently subject to registration requirements under FSORNA as of the date of filing of this complaint, and
>
> ***Class Two:** All persons who in the future will be subject to registration requirements under FSORNA.

147. The plaintiff classes described above seek a declaration that FSORNA is unconstitutional under the Ex Post Facto and Contract Clauses of the United States Constitution, as well as the Due Process Clause of the Fourteenth Amendment, and the First, Fifth, and Eighth Amendments to the United States Constitution.

148. The proposed classes are numerous. There are approximately 57,000 registered sexual offenders in Florida. As a result, joinder of all class members is impractical. Not only are the two classes very numerous, they are constantly changing in specific membership. Moreover, questions of laws and fact common to all class members exist as to all of the constitutional challenges

alleged in this complaint as to FSORNA.    Additionally, all members of the proposed two classes have been or will be subject to the same unconstitutional statutory scheme for registering, then monitoring, persons statutorily designated as sexual offenders by FSORNA.   Given the commonality of the questions pertinent to resolution of the constitutional claims raised herein, a single declaratory judgment is the most expeditious way of providing the required relief for each member of each class.

149.  The named defendants have acted, and will continue to act, in a manner adverse to the constitutional rights of the proposed classes, making final declaratory relief appropriate with respect to the classes as a whole.  Plaintiffs and the classes they seek to represent have been directly injured by FSORNA and unconstitutional practices by the named defendants recited herein, and are at risk of further harm in the future from the continuation of these policies and practices.

150.  Plaintiffs will fairly and adequately represent the interests of the classes proposed herein, and plaintiffs' claims are typical of the claims of all members of these classes. Plaintiffs' counsel will fairly and adequately represent the interests of the classes.

## CLAIMS FOR RELIEF

## COUNT ONE-VIOLATION OF THE EX POST FACTO CLAUSE

151. The retroactive application of FSORNA violates the Ex Post Facto Clause of the United States Constitution, Article I, Section 10, Clause 1, because it makes more burdensome the punishment imposed for offenses committed prior to enactment of FSORNA, and it applies that statute retroactively to all current and future class members.

## COUNT TWO-VIOLATION OF THE DUE PROCESS CLAUSE (Travel)

152. The right to travel is a fundamental right that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. FSORNA substantially interferes with the plaintiffs' ability to travel, and does not provide any individualized consideration before restricting plaintiffs' right to travel. Furthermore, the restrictions imposed by FSORNA to plaintiffs' fundamental right to travel are not narrowly tailored to serve a compelling state interest.

## COUNT THREE-VIOLATION OF THE DUE PROCESS CLAUSE (Work)

153. The right to engage in the common occupations of life is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. FSORNA substantially interferes with the plaintiffs' ability to engage in the

common occupations of life. FSORNA creates a wholesale barrier to employment that is not based on the plaintiffs' fitness or capacity to work in the jobs from which they have been excluded. FSORNA does not provide any individualized consideration before restricting the plaintiffs' ability to engage in the common occupations of life. As a consequence, FSORNA violates the plaintiffs' fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

## COUNT FOUR-VIOLATION OF THE DUE PROCESS CLAUSE (Children)

154. The right to direct the education and upbringing of children is a fundamental right that is protected by the Due Process Clause of the Fourteenth Amendment. FSORNA substantially interferes with the plaintiffs' ability to direct the education and upbringing of their children, because it does not provide for any individualized consideration before restricting the plaintiffs' right to direct the education and upbringing of their children. As a result, FSORNA violates the plaintiffs' fundamental right to direct the education and upbringing of their children because it is not narrowly tailored to serve a compelling state interest.

## COUNT FIVE-VIOLATION OF THE FIRST AMENDEMENT

155.   The First Amendment prohibits abridgment of the freedom of speech. The Fourteenth Amendment incorporates the First Amendment against states such as Florida. FSORNA requires plaintiffs to report information about their online accounts and activity to law enforcement, which substantially interferes with their access to the Internet as a forum for free speech and eliminates the plaintiffs' opportunities for anonymous online speech. Therefore, FSORNA's requirements to report information about online accounts and activity is invalid under the First Amendment because it is not narrowly tailored to serve a compelling state interest, and because it prohibits a substantial amount of protected speech.

## COUNT SIX-VIOLATION OF THE DUE PROCESS CLAUSE (Vagueness, Strict Liability, Impossibility of Performance)

156.   The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that a person of ordinary intelligence need not guess at their meaning and will not differ as to their application by authorities charged with their enforcement.  FSORNA contains provisions that are invalid under the vagueness doctrine because these provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible

for the plaintiffs to conform their conduct to the statutory requirements, and making it likely that the statute will be enforced in different ways in different places or against different registrants. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws with which it is impossible to comply. FSORNA contains provisions with which compliance is impossible. The Due Process Clause also limits the use of strict liability in the criminal law. FSORNA contains provisions that impose strict liability in violation of due process.

## COUNT SEVEN-VIOLATION OF THE EIGHTH AMENDMENT

157.  FSORNA imposes extensive punishments, both on persons previously convicted of sexual offenses and prospectively, that are excessive in relation to the crimes for which the plaintiffs were convicted. Moreover, the community notification provisions of FSORNA subject plaintiffs to vigilante actions by private citizens, who blindly accept the state's characterization of plaintiffs as dangerous, then act to enforce community norms stigmatizing sexual offenders without regard to their actual level of dangerousness or likelihood of reoffending. FSORNA violates plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment.

## COUNT EIGHT-VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION (DOUBLE JEOPARDY)

158.  FSORNA imposes new punishments on persons previously convicted who have at the time FSORNA is applied to them completely served their already-imposed criminal sentences, such as registration duties, community notification, and movement and residence restrictions based simply on the crimes committed, rather than an assessment of the plaintiffs' actual risk to reoffend, in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

## COUNT NINE-VIOLATION OF ARTICLE ONE, SECTION TEN, OF THE UNITED STATES CONSTITUTION (CONTRACTS CLAUSE)

159.  FSORNA operates to substantially impair preexisting contracts between those plaintiffs who resolved their criminal cases by plea agreement with state prosecuting authorities, by imposing new terms and conditions not negotiated by the parties which dramatically increase the punishment for these crimes by imposing lifetime supervision, reporting, and community notification under FSORNA. This is a *prima facie* violation of the Contracts Clause of the United States Constitution, thereby depriving plaintiffs of the rights secured by that provision.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

(a) Issue an order certifying this action to proceed as a class action pursuant to Fed. R. Civ. P. 23(b)(2);

(b) Appoint Estes-Hightower, PLLC, as class counsel pursuant to Fed. R. Civ. P. 23(g);

(c) Issue a judgment pursuant to 28 U.S.C sections 1983 and 2201-2202 declaring the retroactive application of FSORNA violates the Ex Post Facto Clause of the United States Constitution, and issue a preliminary and permanent injunction restraining the defendants from retroactively enforcing FSORNA against Plaintiffs without an individualized determination of dangerousness;

(d) Issue a judgment pursuant to 28 U.S.C. sections 1983 and 2201-2202 declaring that FSORNA unconstitutionally interferes with Plaintiffs' fundaments rights to travel, engage in the common occupations of life, and to direct the education and upbringing of their children, and to engage in free speech, and issue a preliminary and permanent injunction restraining the defendants from enforcing against the Plaintiffs those provisions of FSORNA that interfere with those rights;

(e) Issue a judgment pursuant to 28 U.S.C. sections 1983 and 2201- 2202, declaring that FSORNA is void for vagueness under the Due Process Clause of the Fourteenth Amendment due to vagueness, impossibility, and wrongful imposition of strict liability, and issue a preliminary and permanent injunction restraining the defendants from enforcing against the Plaintiffs those provisions of FSORNA that are unconstitutional;

(f) Issue a judgment pursuant to 28 U. S. C. sections 1983 and 2201-2202 declaring that FSORNA is in violation of the Double Jeopardy Clause of the Fifth Amendment and the Contracts Clause of Article One of the United States Constitution, and issue a preliminary and permanent injunction restraining defendants from enforcing against the Plaintiffs those provisions of FSORNA that are unconstitutional;

(g) Issue a judgment pursuant to 28 U. S. C. sections 1983 and 2201-2202 declaring FSORNA is in violation of the Eighth Amendment to the United States Constitution, and issue a preliminary and permanent injunction restraining defendants from enforcing against the Plaintiffs those provisions of FSORNA that are unconstitutional;

(h) Award the Plaintiffs costs and attorney's fees pursuant to 42 U. S. C. section 1988; and

(i) Grant such other relief this Honorable Court finds just and proper.

Respectfully submitted,

/s/Shon Douctre

Shon Douctre, Attorney

Florida Bar No. 569518

Private Counsel, LLC

733 W. Colonial Dr.

Orlando, FL 32804-7343

Office: 407-849-2949

Fax: 407-849-2951

sdouctre@gmail.com

Trial Counsel for Plaintiffs